UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA ) | Case: 2:21-cr-20746 |
| ) | Hon. Gershwin Drain |
| Plaintiff ) | |
| ) | |
| v. ) | **MOTION TO SUPPRESS** |
| ) | **EVIDENCE AND REQUEST** |
| DWIGHT RASHAD ) | **FOR AN EVIDENTIARY** |
| ) | **HEARING** |
| Defendant. ) | |
| _____/ | |

**NOW COMES DWIGHT RASHAD**, Defendant, by and through his attorney, **TODD PERKINS**, and **THE PERKINS LAW GROUP, PLLC**., and moves this honorable Court to hold an Evidentiary Hearing, and at the conclusion thereof, for a further Order suppressing any evidence found and statements given to officers pre-*Miranda*. Defendant states the following in support:

1. Defendant DWIGHT RASHAD is charged with: *Conspiracy to Distribute a Controlled Substance*, in violation of 21 U.S.C. section 841(a)(l), 841(b)(l)(A), and 846.

2. On November 21, 2019, at approximately 1:00 PM, Trooper David Bellestri of the Michigan State Police observed a black Ford F-150 near the area of Trumbull St, in the City of Detroit, Eastern District of Michigan.

3. Trooper Bellestri observed the vehicle enter the intersection while the light

was yellow, and continue through the intersection, then the light turned red.

4. Trooper Bellestri used this activity as the basis for stopping the subject vehicle.

5. Upon making contact with the driver, Dwight Rashad, Defendant, he asked the driver and passenger to exit the vehicle, where he proceeded to question both Mr. Rashad and the passenger, Rashad Martinez.

6. Trooper Bellestri used the basis of this questioning to further his investigation, and proceeded to perform a canine search of the vehicle after Mr. Rashad did not give consent to a search.

7. The canine search revealed a duffel bag in the back seat containing currency, which was seized and turned over to the Drug Enforcement Agency, which became the basis for the investigation of the instant charges.

8. At no time was Mr. Rashad allowed to leave.

9. The Fourth Amendment provides in part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…" US Const Am IV; Mich Const 1963, art 11, § 11.

10. That, in order to justify an investigatory stop, the police must have specific and articulable facts sufficient to give rise to a reasonable suspicion that a

person has committed or is committing a crime. *People v. Shabaz*, 424 Mich. 42, 59 (1985).

11. That, where probable cause is lacking, the stop and subsequent seizure is unreasonable under the Fourth Amendment. *People v. Haney*, 192 Mich App 207 (1991).

12. That further, the officer lacked reasonable suspicion to detain Defendant in this matter. *Terry v. Ohio*, 392 US 1; 88 S.Ct. 1868; 20 L ED 2d 889 (1968); *People v Walker*, 130 Mich App 304 (1983).

13. That the evidence of suspected criminal activity must be suppressed. *Wong Sun v United States*, 371 US 471; 83 S CT 407; 9 L ED 2d 441 (1963); *People v LoCicero,* 455 Mich 496 (1996).

14. MCL 257.612(1)(b) provides that when a traffic signal displays a steady yellow light, and the vehicle cannot stop safely, it may be driven cautiously through the intersection.

15. Here, no traffic violation was committed to justify the stop of the subject vehicle being driven by Mr. Rashad.

16. Moreover, following the stop, Mr. Rashad was removed from the vehicle for questioning without providing him of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

17. That the line of questioning and answers elicited provided basis for further

3

investigation and a subsequent canine search of the vehicle.

18. That "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., Am. V; Mich. Const. 1963, art. 1, § 17.

19. That the accused must be read their *Miranda* rights before being subjected to custodial interrogation in order to protect their constitutional privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444–445, 477–479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

20. That if a suspect is not afforded *Miranda* warnings before custodial interrogation, no evidence obtained as a result of interrogation can be used against him. *Id*. at 479, 86 S.Ct. 1602 (citations omitted).

21. That a waiver of *Miranda* rights must be made "voluntarily, knowingly, and intelligently." *Id*. at 444, 86 S.Ct. 1602.

22. That the relinquishment of the right must have been "voluntary," in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. *People v. Tanner*, 496 Mich. 199, 209, 853 N.W.2d 653, 659 (2014).

23. That the waiver must also have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id*.

24. "In determining whether a person is 'in custody' for purposes of *Miranda*, courts look to 'the objective circumstances of the interrogation to determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.'" *United States v. Abdi*, 827 F. App'x 499, 506 (6th Cir. 2020) (quoting *United States v. Luck*, 852 F.3d 615, 621 (6th Cir. 2017))

25. If it is argued that custodial statements are voluntary, a two part test must be applied to determine the voluntariness of the statements given"

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. *Abdi* at 507

26. In the instant case, after Mr. Rashad's detention and repeated questioning of Defendant post detention shows that any statements given were a product of coercion and intimidation.

27. Second, Trooper Bellestri's continued in line questioning of Defendant, failing to stop and inform Defendant of his rights without offering Defendant a full awareness of the consequences of the statements given.

28. Under these circumstances, the statements given by Mr. Rashad fail the two-part test put forth by *Abdi*, supra and *Miranda*, supra.

29. Thus, Mr. Rashad respectfully request an evidentiary hearing, and at the conclusion thereof, suppression of any statements given to officers post-detention.

**WHEREFORE**, Defendant respectfully requests that this Honorable Court hold an evidentiary hearing in the premises, and at the conclusion thereof, enter an Order suppressing the evidence gleaned from the stop and any and all statements provided to Officers.

Respectfully Submitted,

**PERKINS LAW GROUP, PLLC**

*/s/ Todd Perkins*
TODD PERKINS P55623
*Attorney for Defendant*
615 Griswold, Suite 400
Detroit, MI 48226

Dated: July 14, 2025 (313) 964-1702

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | ) | Case: 2:21-cr-20746 |
| | ) | Hon. Gershwin Drain |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **MOTION TO SUPPRESS** |
| | ) | **EVIDENCE AND REQUEST** |
| DWIGHT RASHAD | ) | **FOR AN EVIDENTIARY** |
| | ) | **HEARING** |
| Defendant. | ) | |
| _____/ | | |

**BRIEF IN SUPPORT**

**NOW COMES DWIGHT RASHAD**, Defendant, by and through his attorney, **TODD PERKINS**, and **THE PERKINS LAW GROUP, PLLC**., by and for his Brief in Support, and states the following:

**FACTUAL BACKGROUND**

Defendant DWIGHT RASHAD, the defendant in the above-captioned case, has been charged by way of criminal complaint with: *Conspiracy to Distribute a Controlled Substance*, in violation of 21 U.S.C. section 841(a)(l), 841(b)(l)(A), and 846.

During the course of discovery, Defendant was informed, and material furnished in the course of pretrial discovery confirms, that much of the evidence which the government relies upon to establish possession of the contraband in

7

question exists solely based upon the initiation of an investigation following an illegal traffic stop.

On November 21, 2019, at approximately 1:00 PM, Trooper David Bellestri of the Michigan State Police observed a black Forf F-150 near the area of Trumbull St, in the City of Detroit, Eastern District of Michigan. It was at this time Trooper Bellestri observed the subject vehicle enter the intersection *while the light was yellow*, and continue through the intersection, then the light turned red.

Trooper Bellestri used this activity as the basis for stopping the subject vehicle.

Upon making contact with the driver, Dwight Rashad, Defendant, he asked the driver and passenger to exit the vehicle, where he proceeded to question both Mr. Rashad and the passenger, Rashad Martinez. At no time was Mr. Rashad allowed to leave.

Trooper Bellestri used the basis of this questioning to further his investigation, and proceeded to perform a canine search of the vehicle after Mr. Rashad did not give consent to a search.

The canine search revealed a duffel bag in the back seat containing currency, which was seized and turned over to the Drug Enforcement Agency, which then became the basis for Defendant's investigation and subsequent arrest on the instant charges.

## I. All Evidence From the Stop Must Be Suppressed Due to The Illegal Nature of the Stop and Following Search

"A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010). "To require an evidentiary hearing, a defendant's suppression motion therefore must set forth and identify for the court specific and concrete 'issues of fact material to the resolution of the defendant's constitutional claim.'" *Id.* (quoting *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir.1996)). A defendant moving for an evidentiary hearing must "demonstrate a 'colorable claim' for relief." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996) (quoting *United States v. Brink*, 39 F.3d 419, 424 (3d Cir.1994)). A colorable claim for relief must have "issues of fact material to the resolution of the defendant's constitutional claim. *Voigt* at 1067.

### a. A VALID TRAFFIC STOP WAS NOT PERFORMED

In the present case, Defendant was stopped without probable cause that a traffic infraction had been committed. MCL 257.612(1)(b) provides that when a traffic signal displays a steady yellow light, and the vehicle cannot stop safely, it

9

may be driven cautiously through the intersection. Here, no traffic violation was committed to justify the stop of the subject vehicle being driven by Mr. Rashad.

Under the plain meaning of the statute there was no violation of MCL 257.612(1)(b), as the intersection displayed a steady yellow light as Mr. Rashad entered the intersection, thus, he was allowed to proceed through the intersection cautiously, as he did on the night in question. Thus, the stop of Defendant was invalid.

Thus, the stop of Defendant was not a legal traffic stop under Michigan law. Instead, Officers use this ruse as a pretextual stop which is strictly forbidden under Michigan law.

> The goal is to prevent inventory searches from being used as a ruse for general rummaging in order to discover incriminating evidence and, therefore, the applicable policy should be designed to produce an inventory. *People vs. Poole* 199 Mich App 261 1993.

Further, it is settled law in this state that [w]henever a police officer stops someone and restrains that person's freedom to leave, the officer has "seized" the person under the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, the constitution does not forbid all seizures, only unreasonable ones. Id. [*People v. Chambers*, 195 Mich.App. 118, 121, 489 N.W.2d 168 (1992).]

For a stop to be reasonable, it must be founded on a particularized suspicion, based on an objective observation of the totality of the circumstances, that the law

was broken. *Chambers, supra* at 121-122, 489 N.W.2d 168, citing *People v. Shabaz*, 424 Mich. 42, 59, 378 N.W.2d 451 (1985).

The Court has ruled that an arrest or stop may not be used as a "pretext" or "subterfuge" to search for evidence of crime. *People v. Haney*, 192 Mich. App. 207, 209, 480 N.W.2d 322, 324 (1991. In addition, when police lack the reasonable suspicion necessary to support a stop and use a minor violation to stop and search a person or place for evidence of an unrelated serious crime, the stop is a mere pretext. *Id*. The traditional response to this police tactic has been to suppress all evidence derived from a search made incident to a stop or arrest that was a mere pretext. *Id*. at 209-210.

The Court has long held, that the decision to stop an automobile is "reasonable where the police have probable cause to believe that a traffic violation has occurred." *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979). However, an individual "operating or traveling in an automobile ***does not lose all reasonable expectation of privacy*** simply because the automobile and its use are subject to government regulation." *Prouse*, 440 U.S. 648, 662 (1979). (emphasis added). Further, the *Prouse* Court goes on to provide the following narrative concerning the protections afforded to motorists:

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the

> streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As *Terry v. Ohio, . . .* recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. *Terry v. Ohio*, 392 U.S., at 22, 88 S.Ct., at 1880. Nor are they shorn of those interests when they step from the sidewalks into their automobiles. *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

"In analyzing the propriety of the detention" associated with a traffic stop, the Court has consistently applied the reasonableness standard set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). Under *Terry*, the reasonableness of a search or seizure depends on whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry*, 392 U.S. at 20, 88 S.Ct. 1868. Further, "[a] traffic stop is reasonable as long as the driver is detained only for the purpose of allowing an officer to ask reasonable questions concerning the violation of law and its context for a reasonable period." Williams, 472 Mich. at 315, 696 N.W.2d 636.

The search of the vehicle violated Defendant Rashad's right to be free from unreasonable searches and seizures, as guaranteed by both the Michigan and United States Constitutions, because the police officers did not have probable cause to

search Defendant's vehicle and the basis for the stop was pretextual. Further, the search of Defendant's vehicle does not fall under any other recognized exception to the warrant requirement. *United States v Edwards*, 415 US 800 (1974); *People v Townsend*, 25 Mich App 357, 181 NW2d 630 (1970).

WHEREFORE Defendant asks this Court to enter an order suppressing any and all items seized from Defendant's vehicle and all statements made by Defendant post arrest.

Respectfully Submitted,

**PERKINS LAW GROUP, PLLC**

*/s/ Todd Perkins*
TODD PERKINS P55623
*Attorney for Defendant*
615 Griswold, Suite 400
Detroit, MI 48226
Dated:  July 14, 2025                        (313) 964-1702

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2025, the undersigned electronically filed the **Defendant Dwight Rashad's Motion to Suppress** with the Clerk of the Court using the Court's electronic filing system, which will send notification of such filing to all parties to the above cause.

Respectfully submitted,
/s/Todd Russell Perkins
THE PERKINS LAW GROUP, PLLC
*Attorneys for Defendant Dwight Rashad*
615 Griswold, Suite 400
Detroit, Michigan 48226
(313) 964-1702
tperkins@perkinslawgroup.net